**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ISRAEL RIVERA, Individually and on behalf of All Others Similarly Situated,** <br><br> **Plaintiff,** <br><br> -against- <br><br> **CITY-WIDE SEWER & DRAIN SERVICE CORP., LONG ISLAND PLUMBING CORP., EMERGENCY FLOOD RESTORATION, INC. and SALVATORE MANGIA, JR., Jointly and Severally,** <br><br> **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff Israel Rivera ("Rivera" or "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.      Plaintiff is a former plumber technician who worked for Defendants in and around the greater New York City area performing plumbing repairs, installations and related services. Defendants paid Plaintiff and Defendants' other similarly situated technicians on a commissions-only basis without regard to the number of hours worked. However, Defendants unlawfully failed to pay wages free and clear and also unlawfully reduced wages that they paid to Plaintiff through paycheck deductions and by requiring Plaintiff to bear Defendants' business expenses.

Consequently, Defendants failed to pay Plaintiff and other employees the legally-required minimum wage for all hours worked and overtime premiums for working over forty (40) hours in a given workweek.

2.      Plaintiff brings this action to recover unpaid minimum and overtime wages owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also brings claims for unlawful wage deductions, certain unreimbursed business expenses, and Defendants' failure to provide wage statements and wage notices pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and the NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all plumbers and other technicians with similar compensation structures working for Defendants in New York.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.   In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this district and Defendants maintain business locations in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

7.      Plaintiff was, at all relevant times, an adult individual residing in Queens County, New York.

8.      Throughout the relevant time period, Plaintiff worked for Defendants in and around the greater New York City area.

9.      Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b) and his consent form is attached hereto.

**Defendants:**

10.      Upon information and belief, Defendant City-Wide Sewer & Drain Service Corp. ("CityWide") is an active New York Corporation with its principal place of business at 100 Voice Road, Carle Place, New York 11514.

11.      Upon information and belief, Defendant Long Island Plumbing Corp. ("LIP") is an active New York Corporation with its principal place of business at 100 Voice Road, Carle Place, New York 11514.

12.      Upon information and belief, Defendant Emergency Flood Restoration Inc. ("EFR") is an active New York Corporation with its principal place of business at 100 Voice Road, Carle Place, New York 11514.

13.      Upon information and belief, CityWide, LIP, and EFR (hereinafter referred to collectively as the "CityWide Enterprise" or "Corporate Defendants") jointly operate the various components of the CityWide Enterprise. All entities in the CityWide Enterprise are operated together as a single business enterprise with the same employment policies, including wage and hours policies, established and carried out centrally by the CityWide Enterprise management

3

team. All entities utilize the same mailing address: P.O. Box 350, Carle Place, NY 11514, while operating out of the same business headquarters: 100 Voice Road, Carle Place, New York 11514.

14.    Defendant Salvatore Mangia, Jr. ("S. Mangia") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, S. Mangia was in charge of determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of the CityWide Enterprise.

15.    Defendant S. Mangia participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously in his direction and control of Plaintiff and the Corporate Defendants' other similarly situated employees, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

16.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

17.    At all relevant times, Plaintiff, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

18.    Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## COLLECTIVE ACTION ALLEGATIONS

19.    Pursuant to 29 U.S.C. §§ 206, 207 & 216(b) Plaintiff brings his First and Second Causes of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since November 3, 2011 and through the entry of judgment in this case (the "Collective Action Period") who worked for Defendants as plumbers and other technicians with similar compensation structures (the "Collective Action Members").

20.    A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies including, but not limited to: paying their employees on a commission-only basis; failing to pay their employees minimum wage for all hours worked; and failing to pay overtime premiums for hours worked over forty (40) in a given workweek. As a result of these policies, Plaintiff and the Collective Action Members did not receive the legally required minimum wage for all hours worked or overtime premium payments for all hours worked over forty (40) in a given workweek.

21.    Plaintiff and the Collective Action Members had substantially similar job duties, work schedules, and were paid by Defendants pursuant to the same or substantially similar payment structure.

## RULE 23 CLASS ALLEGATIONS

22.    Pursuant to the NYLL, Plaintiff brings his Third through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants at any time since November 3, 2008 and through the entry of judgment in this case (the "Class Period") who worked for Defendants as plumbers and other technicians with similar compensation structures (the "Class Members").

23.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

24.    The Class Members are so numerous that joinder of all members is impracticable.

25.    Although the precise number of Class Members is unknown to Plaintiff, the facts on which the calculation of that number can be based is presently within the sole control of Defendants.

26.    Upon information and belief, there are in excess of one hundred (100) Class Members.

27.    There are questions of law and fact common to the claims of Plaintiff and the claims of the Class. Such common questions will determine Defendants' liability to all (or nearly all) Class Members. These common questions include whether Defendants had a corporate policy of: paying all similarly situated employees on a commissions-only basis without guarantees for minimum wage; failing to pay minimum wage for all hours worked; failing to pay overtime premiums when employees worked in excess of forty (40) hours per week; failing to provide proper wage statements; failing to provide proper wage notices at the time of hire and on or before February 1 of each year; failing to reimburse for business expenses; and unlawfully deducting from employees' earned wages. The answer to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiff on these issues, Defendants would be liable to all Class Members for their NYLL wage and hour violations.

28.    Plaintiff's claims are typical of the Class Members' claims. Plaintiff, like all Class

Members, is a plumber who worked for Defendants pursuant to their corporate policies. Plaintiff, like all Class Members, was, inter alia, not paid minimum wage for all hours worked each week; not paid overtime premium pay for hours worked over forty (40) in a given workweek; was not provided with proper wage statements; was not provided with proper wage notices; was not reimbursed for business-related expenses; and was subject to unlawful deductions from his earned wages. If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

29.     _Plaintiff and his Counsel will fairly and adequately represent the Class_.  There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover his own wages.

30.     Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

31.     _The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class_. These common questions include, but are not limited to:

a.      whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.      whether Defendants failed and/or refused to pay Plaintiff and the Wage Class Members minimum wages for all hours worked;

c.      whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premium pay for hours worked in excess of forty (40) hours per workweek;

d.      whether Defendants took unlawful deductions from the earned wages of Plaintiff

and the Wage Class Members;

e.      whether Defendants failed to provide Plaintiff and the Class Members with proper wage statements;

f.      whether Defendants failed to provide Plaintiff and the Class Members with wage notices at the time of hire and/or on February 1 of each year thereafter;

g.      whether Defendants failed to reimburse Plaintiff and the Class Members for certain business expenses;

h.      whether Defendants' policy of failing to pay workers properly was instituted willfully or with reckless disregard of the law; and

i.      whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

32.      <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>. Defendants are sophisticated parties with substantial resources. Individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

33.      The individual members of the class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendants' Company

34.     At all relevant times, Defendants have been in the plumbing and sewer maintenance business. According to the CityWide Enterprise's websites, www.citywideplumbers.com and www.longisland-plumbing.com, "CityWide Sewer & Drain offers 24/7 emergency services at your convenience. These services include sewer and drain cleaning, all types of plumbing repair, replacing and installing new plumbing parts, products and services to the Residential, Commercial and Industrial markets." The CityWide website also provides that "CityWide employs over 100 sewer and drain professionals and maintains a fleet of 50 plus company service vans and trucks."

35.     Upon information and belief, the CityWide Enterprise operates six (6) different departments: a plumbing department, a drain cleaning department, a cesspool department, a flood restoration department, a grease cleaning department, and a biofuel department.

36.     Defendants jointly market their various services and companies on their respective websites. For example, on CityWide's "Long Island Plumbing" website, Defendants indicate that EFR and Grease Waste Services are "CityWide's Affiliated Companies." (*See* www.longisland-plumbing.com/about.html). Defendants similarly market both CityWide and EFR on Grease Waste Services' website. (*See* www.greasewasterservices.com/index/htm).

37.     Defendants also provide a link to the EFR website (www.emergencyfloodrestore.com) on the homepage of the CityWide website. Clicking on this link however, leads back to the CityWide website.

38.     Defendants' operations are unified and interrelated.

**Plaintiff's Work for Defendants**

39.     Plaintiff Rivera worked for Defendants as a plumber from in or around January 17, 2013 through in or around September 2014 (the "Rivera Employment Period").

40.     From the beginning of the Rivera Employment Period through in or around September 2013, Plaintiff typically worked six (6) days per week. From in or around September 2013 to the end of the Rivera Employment Period, Plaintiff typically worked five (5) days per week.

41.     Throughout the Rivera Employment Period, Plaintiff was typically scheduled to work from 8:00 am until 5:00 pm, although the actual length of his shifts varied depending on the assignments he received. Plaintiff frequently received assignments shortly before 5:00 pm and was not allowed to clock-out until his last job was completed. Defendants also frequently assigned Plaintiff to emergency jobs before 8:00 am. For this reason, Plaintiff frequently started his shifts earlier than 8:00 am or ended his shifts after 5:00 pm.

42.     Throughout his employment period, Rivera was required to ask a supervisor for permission if he wanted to leave work at 5:00 pm.

43.     Throughout his employment period, Rivera typically worked between approximately forty-one (41) and fifty-five (55) hours per week, although at times he worked over sixty (60) hours in a given week.

44.     Throughout the Rivera Employment Period, Plaintiff was paid on a commissions-only basis, where he was told he would be paid a thirty seven percent (37%) commission for each plumbing job he performed.

45.     Throughout the Rivera Employment Period, Defendants paid Plaintiff with checks primarily issued by LIP. Although Plaintiff was provided with a wage statement when he

received his pay, Defendants did not allow Plaintiff to keep this document and instead required Rivera to sign the statement and hand it back to Defendants.

46.     Plaintiff sometimes performed work for the other departments of the CityWide Enterprise. Defendants provided Plaintiff with 1099 forms for this work.

Unreimbursed Business Expenses and Wage Deductions

47.     At the beginning of the Rivera Employment Period, Defendants provided Plaintiff with a van and a snaking machine, and gave him an "Initial Parts List" listing all other equipment necessary for the job. Plaintiff was required to purchase the items on this list from Defendants. This equipment was deducted from Rivera's pay in installments of twenty-five ($25) dollars. Defendants deducted a total of approximately one thousand three hundred dollars ($1,300) from Rivera's pay for the items on this list.

48.     Throughout the Rivera Employment Period, when Plaintiff needed replacement equipment, he was required to acquire it from Defendants. Defendants deducted the cost of this equipment from Rivera's pay.

49.     In 2013, Plaintiff's equipment expenses amounted to a total of approximately three thousand seven hundred dollars ($3,700), inclusive of the "Initial Parts List" deduction mentioned above.

50.     In the event Plaintiff needed supplies or equipment while he was away from CityWide headquarters, Defendants required Rivera to purchase these items out-of-pocket. Defendants failed to reimburse Rivera for these expenses.

51.     Notwithstanding the fact that Defendants provided Plaintiff with a van for him to use during his shifts for work duties, Plaintiff was required to register the vehicle under his name. Defendants failed to reimburse Plaintiff for the costs of registering the vehicle yet retained

possession and ownership upon his separation from CityWide.

52.  Plaintiff was required to pick up the van from Defendants' premises each morning to begin his work and was required to return the van to Defendants' premises each evening when he had completed his last service job. Notwithstanding the fact that Plaintiff paid for, among other things, the gas and insurance for the van, Plaintiff was not allowed to drive the van for his personal use.

53.  Throughout the Rivera Employment Period, Defendants required Plaintiff to pay out-of-pocket for the van's auto-insurance, mileage, gas, parking expenses, and tolls. Defendants failed to reimburse Plaintiff for these expenses.

54.  In 2013, Plaintiff's auto-insurance expenses amounted to approximately three thousand dollars ($3,000) and his gas expenses amounted to approximately seven thousand dollars ($7,000).

55.  Upon information and belief, certain other plumbers and technicians working for Defendants were required to purchase their own vans in order to work for Defendants. Defendants did not reimburse these employees for the cost of purchasing their van.

56.  Upon information and belief, certain other technicians working for Defendants were required to "lease" their van from Defendants in order to be a technician for Defendants. Defendants would deduct their "lease" fees from the technician's pay on a weekly or monthly basis.

57.  Throughout the Rivera Employment Period, despite being paid on a commissions-only basis (not based on the number of hours that Plaintiff worked), Plaintiff was required to keep track of his hours by clocking-in and clocking-clock-out with the CityWide dispactcher.

58.  Defendants offer a six (6) month warranty on their plumbing services. In the event

a customer places a call-back to have a CityWide technician repair a prior service, Defendants deduct up to one hundred twenty-five dollars ($125) from the pay of the plumber who performed the original service. Of this deduction, Defendants pay the technician performing the call-back thirty-seven percent (37%) and keep the remaining sixty-three percent (63%).

59.     Every pay cycle, Defendants would deduct seven dollars ($7) for uniforms from Plaintiff's pay.

60.     Due to Defendants' deductions from Plaintiff's pay associated with callbacks, tools and equipment, along with unreimbursed business expenses for gas, insurance and materials, in certain weeks Plaintiff ended up earning less than minimum wage for all hours worked. This was a corporate policy of Defendants that applied to all of Defendants' plumbers other similarly situated employees.

61.     Despite the fact that Plaintiff was frequently required to work in excess of forty (40) hours per week, Defendants failed to pay him overtime compensation for hours worked in excess of forty (40) per week.

62.     Despite the fact that Plaintiff frequently worked in excess of eight (8) hours per shift, Defendants would not allow Rivera to take full thirty (30) minute uninterrupted lunch breaks.

Defendants' Unlawful Corporate Policies

63.     Like Plaintiff, Defendants' other similarly situated employees were paid on a commissions-only basis. Paying their employees on a commissions-only basis was a corporate policy of Defendants that applied to all of Defendants' plumbers and other similarly situated employees.

64.     Requiring employees to register company vehicles under employees' names and

failure to reimburse registration costs was a corporate policy of Defendants that applied to all of Defendants' plumbers and other similarly situated employees.

65.     Requiring employees to pay out-of-pocket for auto-insurance, mileage, gas, parking expenses and tolls, and failure to reimburse said expenses, was a corporate policy of Defendants that applied to all of Defendants' plumbers and other similarly situated employees.

66.     Requiring certain employees to purchase their own vans in accordance with Defendants' specifications and requirements in order to work for Defendants and failing to reimburse these employees for the cost of their van was a corporate policy of Defendants that applied to certain of Defendants' plumbers and other similarly situated employees.

67.     Requiring certain employees to "lease" a van from Defendants in order to work for Defendants and deducting from these employees the cost of the "lease" of the van was a corporate policy of Defendants that applied to certain of Defendants' plumbers and other similarly situated employees.

68.     Deducting equipment costs from employees' pay was a corporate policy of Defendants that applied to all of Defendants' plumbers and other similarly situated employees.

69.     Despite the fact that Defendants required that all Plaintiffs have certain tools in order to perform their work as technicians, Defendants failure to reimburse employees for supplies and equipment necessary to perform their work was a corporate policy of Defendants that applied to all of Defendants' plumbers and other similarly situated employees.

70.     Deducting up to one hundred twenty-five dollars ($125) from employees' pay for call-backs was a corporate policy of Defendants that applied to all of Defendants' plumbers and other similarly situated employees.

71.     Deducting seven dollars ($7) for uniforms from employees pay was a corporate

policy of Defendants that applied to all of Defendants' plumbers and similarly situated employees.

72.     Defendants required Plaintiff and their other technicians to shoulder Defendants' business expenses as a requirement of employment.

73.     Defendants' failure to pay minimum wage was a corporate policy of Defendants that applied to all of Defendants' plumbers and other similarly situated employees.

74.     Like Plaintiff, Defendants' other similarly situated employees were required to work in excess of forty (40) hours per week, yet Defendants failed to pay these other employees overtime compensation for hours worked in excess of forty (40) hours per week.  This refusal to pay overtime compensation for hours worked in excess of forty (40) in a given week was a corporate policy of Defendants that applied to all of Defendants' other plumbers and similarly situated employees.

75.     Defendants have simultaneously employed other individuals like Plaintiff during the Class Period and Collective Action Period and continuing until today, to perform work as plumbers and technicians.  As stated, the exact number of such individuals is presently unknown but within the sole knowledge of Defendants and can be ascertained through appropriate discovery, and is believed to be in excess of one hundred (100).

76.     Defendants failed to provide Plaintiff and its other similarly situated employees with proper wage notices at the time of hire or on February 1 of each year.

77.     Defendants failed to provide Plaintiff and its other similarly situated employees with proper wage statements.

78.     Throughout the Class Period, Defendants have employed well over forty (40) employees within New York State.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE

79.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

80.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

81.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

82.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collection Action Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonable delayed payment of wages, liquidated damages, reasonable attorney's fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

83.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

84.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

85.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

86.    Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE

87.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

89.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and the Class Member to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorney's fees, and costs and disbursments of the action pursuant to NYLL §§ 663(1) et al.

## FOURTH CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME

90.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

91.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

92.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## FIFTH CAUSE OF ACTION
## NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS

93.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

94.     Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate

or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

95.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS

96.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

97.     Defendants have willfully failed to supply Plaintiff and the Class Members a proper wage statement as required by Article 6, § 195(3).

98.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

19

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNREIMBURSED BUSINESS EXPENSES**

99.    Plaintiff, on behalf of himself and the Class Members, repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

100.    Defendants required Plaintiff and the Class Members to pay for insurance, gas, parking, tolls, supplies, equipment and other associated costs out-of-pocket. Accordingly, Defendants are required to compensate Plaintiff and the Class Members for all business-related expenses that Defendants required Plaintiff to incur without reimbursement.

101.    The Defendants' NYLL violations have caused Plaintiff and Class Members irreparable harm for which there is no adequate remedy at law.

102.    Due to Defendants' NYLL violations, Plaintiff and the Class Members are entitled to recover damages from Defendants in the amount of Defendants' unreimbursed business expenses for which Plaintiff and the Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.* and § 196-d.

**EIGHTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNLAWFUL WAGE DEDUCTIONS**

103.    Plaintiff, on behalf of himself and the Class Members, repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

104.    Defendants willfully violated the rights of the Plaintiff and the Class Members by failing to pay the full amount of their wages as a result of deductions for, *inter alia,* call backs, uniforms, supplies and equipment.

105.    Defendants' deductions from earned wages caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are

entitled to recover from Defendants the amount that Defendants took from their wages in the form of deductions damages for unreasonably deleayed payment of wages, liquidated/punitive damages, pre-judgement and post-judgement interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the NYLL.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.     Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.     An order tolling the statute of limitations;

d.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with

Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.   An award of compensatory damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.   An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime premium compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.   Designation of Named Plaintiff as representatives of the Class Members and counsel of record as Class Counsel;

i.   An award of damages arising out of the illegal deductions from earned wages;

j.   An award of liquidated damages arising out of Defendants' willful illegal deductions from earned wages, pursuant to the NYLL;

k.   An award of damages arising out of the failure of Defendants to reimburse Plaintiff for business expenses;

l.   Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Artilce 6 § 198(1)-b;

m.   One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL § 198(1)-d;

n.      Payment of unreimbursed business expenses under the New York Labor Law;

o.      An award of prejudgment and post-judgment interest;

p.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

q.      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      November 3, 2014

**PELTON & ASSOCIATES PC**

By: _____
Brent E. Pelton (BP 1055)
Taylor Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff, the Putative Collective and Class*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of City Wide Sewer & Drain, Long Island Plumbing Corp., Emergency Flood Restoration Inc. (City Wide) and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.


Signature          10/14/14        Israel Rivera

Signature         Date            Printed Name